*CLERK*
*Copy*

1   Steven Haas, Laser
    16451 Quail Run Drive
2   Laurel, DE 19956
    323-214-6527
3   Laser.Haas@yahoo.com

4           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
5

STEVEN HAAS, LASER                    Case No.: [Number]
6
            Plaintiff,
7
vs.                                   COMPLAINT FOR DECLARATORY AND
8                                     INJUNCTIVE RELIEF, SEEKING TRO.

DONALD TRUMP,
9   ,in his official capacity
    as President of the United States;
10  JEFF SESSIONS in his official capacity      Case: 1:17-cv-00861         (F-Deck)
    as U.S. Attorney General presiding          Assigned To : Unassigned
11  over the Department of Justice;             Assign. Date : 5/9/2017
    MICHAEL PIWOWAR in his official capacity    Description: Pro Se Gen. Civil
12  named the Acting head of
    Securities & Exchanges Commission;
13   JAMES COMEY, in his official capacity
    as head of the FBI;
14  CLIFFORD WHITE in his official
    capacity as DOJ Deputy Director in charge of the
15  Executive Office of United States Trustee's;
    ELLEN SLIGHTS in her official capacity as employee
16  of the Wilmington, Delaware Justice Department
    and John/Jane Does 1- 10
17
            Defendant(s)
18

19

20  *Can we let a church deacon of Nitti's become top fed prosecutor over Capone cases?*

21      I.      INTRODUCTION – Troubling Matters of National Consequence

22      1.      Steven Haas, more commonly known as "Laser" (or Laser the Liquidator) was the

23  former Delaware Bankruptcy Court appointed fiduciary over the eToys case (DE Bank 01-706) via

24  his 100% owned entity Collateral Logistic's, Inc., ("CLI"), and Laser, as Plaintiff seeks intervention,

25  through a temporary restraining order, or other way, prudent and just, to block nomination of Jay

26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 1

MAR 2 2 2017

Clayton, a partner Sullivan & Cromwell ("SullCrom"), to be head of the Securities & Exchanges Commission ("SEC") per request of United States President Donald Trump.  This is necessary due to the fact the President is likely unaware of the consummate bad faith acts and assaults upon the Constitution of the United States by Goldman Sachs ("GSachs"), SullCrom and related parties; and the fact the original email to the White House and constant Tweets to the President requesting correction of a clear error, of his pick of SullCrom associate Jay Clayton, to be head of the SEC, and Plaintiff's faxing to Senate Chair & Ranking member apropos, all appears to be to no avail!

2.      Back in 2001, Plaintiff blew the whistle, with **_Smoking Gun_** proofs compelling counsels confessions, in 2005, about GSachs and Bain Capital ("BAIN") crooked counsels false affidavits, by eToys Debtor counsel Morris Nichols Arsht & Tunnell ("MNAT") and eToys Creditors Committee counsel of Traub Bonacquist & Fox ("TBF"). Where MNAT & Paul Traub unjustly enriched themselves, and their secret clients GSachs & BAIN, by utilization of erroneous Bankruptcy Rule 2014/2016 affidavits. Including intentionally deceiving the court about MNAT & Paul's failures to disclose their conflicts (a fact deemed admitted, after Paul Traub confessed TBF consciously allowed bogus affidavits to remain in the docket record).

3.      This pursuer of justice testified to many courts, of the racketeering ways of GSachs and BAIN planted parties, causing "prosecutorial gaps", for a decade plus, and some of the plants also were (some, like Andy Vara, Ellen Slights and Mark Kenney, still are) rank & file federal agents, who betray the public's trusts and their oaths of office, whilst some (Connolly) did "revolving door" switching of sides, detrimental to our nation's security, causing collateral damage to thousands, losing billions, with people dead, untimely (including a Lackner brother of an Assistant United States Attorney {"AUSA"}). These harms were avoidable, if the incestuous, observably conflicted, improper persons, placed in lofty positions of civic duty, had been stayed from their autocracy.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 2

4       GSachs law firms, of MNAT & SullCrom are conspicuously enterprising via acts of misfeasance & malfeasance, retaliation, obstruction, and more, to plunder GSachs clients, such as eToys, where the planted fed agents assure the billions in ill-gotten gains, will not be **clawed back**.

## II.       JURISDICTION & VENUE & RIGHT for REVIEW

5.      This Court has jurisdiction pursuant to **28 U.S.C. § 1331**, as this is a case of federal question, on issues of national significance & importance, concerning agencies having public trust.

6.      Venue is proper under **28 U.S.C. § 1391** as Defendants are United States agencies or officers sued in their official capacities.

7.      Substantial part of the events, including the forthcoming Senate hearings, and the previous acts of omissions, dereliction/breach of fiduciary duty, misfeasance, malfeasances giving rise to the claims and prayers for relief germane to above will transpire in Washington, D.C.; and the Securities Exchange Commission is headquartered in Washington, D.C.

8.      Per U.S. Code, Title 5 > Part I, Chapter 7 subsection § 702 – it states a person:

> "-- *suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action* [non-action] *within the meaning of a relevant statute, is entitled to judicial review thereof*".

## III.       AVER

9.      **D**ue to the fact, this "Complaint" is coming from a *pro se* Plaintiff, making allegations extraordinary - against esteemed persons - it seems prudent for Plaintiff to provide corroboration the allegations herein, are truth and correct.

10.     The best way to do this, in short order, is for, I, Steven Haas, more commonly known as Laser Haas (or Laser the Liquidator) to affirm, to this court, upon information & belief, this, the 21st day of March, 2017, that all the remarks in this pleading, are True & Correct, and Plaintiff avers such is so - **UNDER PENALTY of PERJURY**.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -       PAGE 3

11.     Part of the reasons there has been a stymie of justice, in our eToys related cases, is due to the fact rogue elements in America's systems of justice, like former SDNY United State Attorney's ("USAtt") office, lead investigator, Ron Gardella, utilized lessor known undercurrents about this Plaintiff, as a tool to "deal" themselves into career advances (for what can be called an obvious betrayal of public's trust - aiding & abetting GSachs rackets).

12.     In March 2013, Ron Gardella was working for SDNY USAtt Preet Bharara's office, under Brendan McGuire, when Gardella gave this pursuer of justice email confirmation of receiving eToys/GSachs/ BAIN and Paul Traub evidences, of a decade long racketeering crime spree (that includes note Paul Traub was "control" partner of Tom Petters Ponzi & Marc Dreier fraudster).

13.     When Mr. Gardella spoke, on the phone, in 2013, his obfuscation was a delve into Plaintiff's personal history, instead of talking about the merits of eToys fraud cases.

14.     Specifically, one of the first words of consequence, out of Ron Gardella's mouth, during phone conversation – were - "*OMG, you are a career criminal*".

15.     Then, speciously, weeks later, Mr. Gardella was promoted off the eToys case, to be head of NYC OIG office and our eToys case was tossed into the trash (like a dozen times before).

16.     Gardella's reference was to the file of my youth, now 40 years old, where my parents trained me, and would punish me for failures, to be a rogue.

17.     I paid more than my share of prices for my shameful youth; which is ancient history now, and moot. It has nothing to do, *whatsoever*, concerning my standing in eToys, or my duty as a citizen/court appointed fiduciary - to seek justice against organized criminals and their crimes.

18.     All questions of Plaintiff's character, concerning these cases, are made moot upon the documented numerous pleadings, of Plaintiff turning down, and reporting, a million-dollar bribe offer by MNAT, Paul Traub and BAIN's roaming manager, Barry Gold, to join their rackets

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 4

[Bankruptcy] *rings* to become a roaming manager (like Mike Glazer, Jack Bush, Paul Traub or Barry Gold, who fleece public & private companies and do frauds inside insolvencies cases).

19.     Career criminals in this immediate, are the willful blind, and "Color of Law"ians, who have betrayed the public's trust, for the sake of veiled agendas.

20.     This is not ethical rocket science. Allowing the bad faith parties to argue Plaintiff's past as grounds for their escaping accountability, as if such were *in pari delicto* exculpation of their unrelenting acts of *malum in se* and *malum prohibitum*, so the swindlers could remain, *permanently*, 'Scot Free' - would be a severe miscarriage of justice (and it is such manifest injustices that this pleading seeks to prevent – to stop GSachs/SullCrom connected – from obtaining high office).

**III.     FACTS to resolve the conundrum of Fed.R.Civ.P. 8, v. Twombly & Iqbal**

*Though Jay Clayton may be pure as snow, he is a fruit from a vulgar poisoned tree!*

21.     Plaintiff is making somber accusations against nationally significant & important persons; which presents a challenge when it comes to rules of pleadings by a pro se party.

22.     The Federal Rules of Civil Procedure ("Fed.R.Civ.P."), per Rule 8, requires concise as possible a pleading; which presents a hard challenge, as such is near diametric to the more recent standards set by the United States Supreme Court in the 2007 case of *Bell Atlantic v. Twombly*, and the 2009 case of *Ashcroft v. Iqbal*.

23.     If movant were to try to tell all the crimes & venality of the past 2 decades – in this complaint - it would become a War & Peace type pleading of 1000 pages.

24.     On the other hand, it is easy to dismiss a *pro se* party, unless Plaintiff pleads the case with specificity & particularity above the norm. In the past, during the learning curve, of how to plead a case, instead of rant, terms like vexatious and insubstantial, have been used to dismiss.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -     PAGE 5

25. It is not easy to do a good brief, as plaintiff, *technically*, didn't graduate from high school, getting bad grades in English (it is good that, in this modern day, we have grammar check).

26. For the sake of brevity, Plaintiff will try to be "brief", and avoid putting more proof than is necessary, except for the bare minimums Iqbal & Twombly would demand; which should be satisfied by the email of the Department of Justice ("DOJ") Deputy Director, the Executive Office of United States Trustee ("EOUST"), combined with United States Trustee ("UST") Motion to Disgorge (the "Disgorge Motion") TBF, for $1.6 million (resultant of Paul Traub's confessions); and the Delaware Bankruptcy Court's Chief Justice published "OPINION" of October 4, 2005.

27. Hopefully, with those setting the stage and the further corroborative of the 2005 affidavit of the eToys Creditors' Committee Chairman; which UST trial attorney, Mark Kenney, made sure was [dishonestly] stricken from the record and such related documentation of Colm Connolly's resume at the DOJ's website, should be sufficient compliance to Iqbal & Twombly.

### IV.   Common Sense Arguments Against Jay Clayton to be Head of SEC

28. Germane to this pleading, is the obvious appearance of impropriety, glaring, resultant of the nomination of Jay Clayton to head the SEC., where Mr. Clayton has sided with clients, against the SEC, most of his career, and he has worked for SullCrom and GSachs. Clayton also has a wife still continues to work at GSachs.

29. Even if, *arguendo*, the eToys bankruptcy fraud was not an issue, directly connected to the parties, it seems this nomination – given the empirical evidence of depraved indifference by GSachs, SullCrom and MNAT – is a pick for SEC akin to having Nitti oversee Al Capone cases.

30. Many seem to dodge the dynamic vex that GSachs was a participant in the 2008 fraud crisis. And, the glaring fact that it's not like there – *might be* – some instances where the SEC

"might" need to review GSachs dynamics. To the contrary, it is highly more likely, of the GSachs

endeavors, being the largest Wall Street firm, active within vast spectrums,  where GSachs would be

the top priority target of SEC inquiry, on a daily basis.

31.     Basically, our nation is being asked to appoint a party, to run a nationally significant

& important watchdog agency, to guarantee our economic security, where the top dog of the SEC

will likely have to work, double-time or overtime, just to assure all issues of recusals – are addressed.

32.     Also, BAIN escaped prosecution, over and over, again and again, while partners with

GSachs. Wouldn't any other scheming party simply seek to muddy the waters, by partnering with

GSachs (or BAIN), so they too, could enjoy guarantees of *nolle prosequi*?' It is simple common

sense, once the proverbial "fix" is "in" that everyone wants a piece of the action; and, logic dictates,

the racketeers will seek the path of least resistance to fleece bigger, faster and from as many targets

as possible (i.e., eToys may have not been, insolvent – and Mattel could *have* would up bankrupt).

V.     **Background Facts on GSachs & BAIN benefiting from the "fix" racketeering**

33.     These facts are provided, below, to show how much racketeering and the degree of

reprehensibility of betrayal of clients has transpired, by GSachs and affiliated parties; which also

includes frauds on the court, of the 1999, eToys initial public offering ("IPO") that was handled by

GSachs and its N.Y. law firm of SullCrom, in collusion with GSachs Delaware law firm of MNAT.

34.     Though the stock price of eToys went to a predictable $80 plus, the connivers only

allowed eToys to receive less than $20 per share, via a classic pump-n-dump stock fraud scheme.

35.     The NY Times reported on the $600 million "spinning" scheme of GSachs, against

its client, eToys (see NYT 2013 "Rigging the IPO Game"); which – cause & effect – the March 2013

article resulted in BAIN's cancellation of the pressed efforts to take Toys R Us public (again).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -     PAGE 7

36.     Compounding schemes & artifices to defraud, MNAT falsified its Bankruptcy Rule 2014/2016, in eToys, hiding MNAT/GSachs relationships, when MNAT petitioned and received, the Delaware Bankruptcy Court's approval for MNAT to become eToys Debtor's counsel.

37.     While benefiting from many erroneous Bankruptcy Rule 2014/2016 affidavits, MNAT also asked for, and received, the court's permission to Destroy eToys Books & Records; (eToys docket item 300); which pointed out to Plaintiff by Jeremy Bates SullCrom's [*environmental*] counsel of the eToys case. Bates was subsequently, removed from the eToys case; which was then, speciously, placed entirely, under seal (until the March 2013 NYT article).

38.     MNAT also nominated a cohort in crime (Paul Traub, a Ponzi partner of Tom Petters) to be prosecuting attorney of GSachs, in the New York Supreme Court case of eToys (renamed ebc1 after BAIN stole eToys domain names) versus GSachs (case # 601805/2002).

39.     In essence, GSachs sued GSachs and eToys lost a billion when Traub settled the case on the cheap, for $7.5 million (which Traub, Barry Gold and MNAT argued on who gets $$$)!

40.     Making all such extensively & egregious is the fact none of this was investigated or prosecuted due to the fact an MNAT partner, Colm Connolly was (silently) arranged to be the federal prosecutor over these very cases of national consequence.

41.     In 1999, during The Learning Company ("TLCo") merger with Mattel (handled, in part, by MNAT), resulting in a debacle of $4 billion instant loss to Mattel investors, as Mr. Connolly (who clerked for an MNAT partner at the Third Circuit) conveniently "switched sides" to become a partner of MNAT. Oddly enough, there are no known investigations into the cooked books fraud. Colm Connolly then "revolved door" once again, going back, on August 2, 2001, where Connolly as the full U.S. Attorney, helped to bury the eToys stock & bankruptcy fraud case (see DOJ website Office of Legal Policy https://www.justice.gov/archive/olp/colmconnollyresume.htm ).

42.    The U.S. Supreme Court Hazel Atlas-Glass v Hartford Empire (1944) affirms the fact there's no Statute of Limitations upon our eToys case; but eToys is not the only instance of these "boyz" doing massive material adverse harms, as the additional cases of TLCo, Tom Petters/Fingerhut, along with Marc Dreier and In re Cosmetics Plus – tends to document. Those cases might have been prevented, had justice system properly addressed the issues.

43.    Protection of GSachs/BAIN's rogues planted within the DOJ, are so strong, upon Plaintiff being provided this *Smoking Gun* proof by the resume, of Colm Connolly, showing the facts Colm was refusing to investigate or prosecute Connolly's former partners of MNAT and that firms clients of GSachs and BAIN – whilst Colm was failing to disclose his conflicts of interest of direct connections; which resulted in "protection" of the rackets and the shutdown of the Public Corruption Task Force (see Los Angeles Times 2008 article "Shake-up roils federal prosecutors" http://articles.latimes.com/2008/mar/20/local/me-shakeup20 )

44.    As reported by the L.A. Times, the roil was career federal agents being threatened to keep silent, about the reasons why - they believed the Corruption Task Force - was dismantled.

45.    The hubris of the bunch is mindboggling, as the head of the special unit, along with the Acting U.S.A.G., had the unmitigated gall, to be their excuse for the need to disband the Task Force, to claim there were no public corruption cases worthy of prosecution,

46.    Odd thing is, Plaintiff gave them a Complaint about public corruption, weeks prior.

47.    In 2004, Plaintiff's ferret out, of *Smoking Gun* evidences, resulted in an Emergency Hearing on December 22, 2004, to address the failures to disclose eToys case conflicts of interests

48.    Coincidently, on the same day of December 22, 2004, the EOUST press release noted the fact Region 3 UST, Roberta DeAngelis, was replaced with Kelly B. Stapleton; and EOUST Director Lawrence Friedman noted Stapleton was a former prosecutor, as it was stated by Kelly;

*"As a former prosecutor, the elimination of fraud and abuse from the bankruptcy system is of compelling interest to me. I look forward to working toward that goal under the leadership of Director Friedman and with the region's excellent career staff."*

49.     Subsequently, MNAT, Barry Gold and Paul Traub's TBF did provide "Responses" on January 25, 2005, with confessions to their failures to disclose conflicts of interests.

50.     Plaintiff's February 4, 2005 senior priority administrative claims hearing, was then rescheduled (as one simply can't take payment from vault robbers, who confessed their crimes).

51.     By that time, Plaintiff had been usurped from his court appointed fiduciary duty, as head of eToys, by MNAT and Paul Traub, who planted Barry Gold into eToys, as a post-bankruptcy petition President; and Barry then became the eToys Confirmed PLAN Administrator.

52.     Prior to that, the eToys shareholders group, spearheaded by Robert Alber, asked for their permitted equity committee per Bankruptcy Code & Rules; but MNAT, Traub/TBF and Barry Gold all objected to such, under the fallacious pretense they had the backs of the shareholders (when, in actuality, the polar opposite was true – MNAT {and SullCrom} along with Paul Traub and Barry Gold were colluding with GSachs & BAIN to destroy the eToys public company).

53.     The reckless disregard for the truth went so far as to eToys shareholder Robert Alber questioning Barry Gold and Paul Traub, on the stand, in October & November 2002 Pre-PLAN confirmation hearings, about the possibility they failed to disclose their connections to each other.

54.     Not only did Barry Gold and Paul Traub deny their links, they continued to lie.

55.     Barry Gold's 2002 Confirmed PLAN Administrator's Declaration, Under Penalty of Perjury, stated Paul Traub/TBF and Barry Gold were "extensive" arm's length/good faith parties.

56.     Then, having been caught, red-handed, by Plaintiff, in 2005, Barry Gold and Paul Traub admitted they were partners; and that TBF had paid Mr. Gold four payments of $30,000.00 each, from January 2001, halting in May 2001, when Paul Traub put Barry Gold into eToys.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -     PAGE 10

57.     Thus, Barry Gold, MNAT and Traub's TBF are guilty of the racketeering bankruptcy crime 18 U.S.C. § 155 – Schemes to Fix Fees; as Barry Gold is documented to get $40,000.00 per month at the expense of the eToys estate, whilst TBF was relieved of paying the $30,000.00 each.

58.     Unfortunately, the bad faith parties had no qualms about their confessions, knowing that he proverbial "fix" was "in" with MNAT's partner, Colm Connolly, being the very USAtt, in Delaware, presiding over Fingerhut, Mattel/TLCo and eToys related cases (like Kay Bee).

59.     MNAT forged a "HAAS Affidavit" (eToys docket item 816), telling the Delaware Bankruptcy Court that [Laser] HAAS had simply "waived" millions of dollars in fees and expenses; which the court cruelly and unjustly accepted, resulting in the aiding & abetting the racketeers to retaliate upon Laser/CLI. Then the court forbade Laser Haas from objecting to the HAAS Affidavit being used fraudulently, despite the fact MNAT, Paul Traub and Barry Gold had already confessed multiple failures to disclose their conflicts of interests, including intentional lies (in other words, the parties confessed lying under oath – but they were still allowed to keep their ill-gotten gains).

60.     Apropos to the current argument a GSachs/SullCrom party presents huge risks, is another vex upon the nation of the fact that Plaintiff had over a dozen individual and nationally known law firms, appointed in the eToys case, to handle CLI's senior priority administrative claim (including the fact MNAT was a court appointed party to file CLI's paperwork); but every lawyer and firm flatly refused to inform the court and authorities about the organized crimes or the reprehensibility of attorneys at law betraying court approved clients.  How the courts and federal authorities can sit, idle by, when betrayal of client's trust is systemic – is intolerable!

61.     It is against the law – specifically 18 U.S.C. § MisPrision of a Felony – for attorneys at law to aide & abet the assaults upon the Constitution of the United States, by the failing to inform the authorities or courts of knowledge of crimes, before, during and after the fact.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -       PAGE 11

62.     Again, if bad faith parties are aware the "fix" is "in" via handpicks, then they have no need to be worried about investigation or prosecutions; because they know that would also result in the bringing down of GSachs & BAIN, or their related "protected" law firm parties.

63.     Making these crimes extensively heinous & egregious is the fact that the parties were forewarned by the UST program, not to replace eToys fiduciaries with anyone who would present a conflict of interest scenario.

64.     Specifically, the February 25, 2005 Disgorge Motion of Traub's TBF, by the UST, for $1.6 million dollars (eToys docket item 2195) addressed Traub/TBF failure to disclose the Barry Gold conflict of interest. In the Disgorge Motion, paragraph 18, the UST testifies about TBF's Objection (confession) of the January 25, 2005 "Responses"; which was ordered to be done, by the Delaware Bankruptcy Court, during the December 22, 2004 Emergency Hearing.  It corroborates the fact Paul Traub and Michael Fox of TBF had consciously discussed amending their Bankruptcy Rule 2014/ 2016 disclosures – but declined to amend; which is a deliberate act of fraud on the court.

65.     Furthermore, in paragraphs 19 & 35 of the eToys Disgorge Motion, of TBF, the UST also testifies to the fact Traub's TBF was forewarned, as stipulated in paragraph 19:

> "In the context of TBF's experience, the multiple connections between TBF and Gold, and the facts surrounding Gold's employment, TBF's failure to disclose any of its three distinct connections with Gold is difficult to understand as inadvertent rather than deliberate. TBF's partners are experienced bankruptcy practitioners who have filed retention applications in a number of cases in Delaware and other judicial districts. They are not strangers to the court or the retention process, nor are they strangers to the comprehensive and ongoing relationships analysis that any professional must perform when it seeks to be employed by a trustee or official committee in a bankruptcy case. More significantly, TBF was specifically aware in this matter, from discussions with the Office of the United States Trustee, of the UST's concern about replacing corporate officers with individuals related to any of the retained professionals in the case. TBF Objection, ¶ 10. Finally, Gold's employment by the Debtor was not something that just happened without TBF's involvement and caught them by surprise; rather, TBF on behalf of the Committee recommended Gold to the Debtor. TBF Objection, ¶ 11".

66.     In other words, Paul Traub asked permission to replace Plaintiff, as head of eToys, with a handpick; and was told not to do so. Then Traub/TBF ignored the federal authority and went ahead, doing so, in secret; and no confessions occurred - <u>until the bandits were caught, years later</u>.

67.     Furthermore, whilst Paul Traub is, ***purportedly***, being punished by the UST eToys Disgorge Motion, over in the Kay Bee Toys bankruptcy case( 04-10120), Kay Bee's CEO (Michael Glazer, who works for Mitt Romney, at Stage Stores), paid himself $18 million and BAIN $83 million, prior to filing bankruptcy of Kay Bee, in Delaware (Bankr 04-10120).

68.     Paul Traub asked for permission to prosecute BAIN and Glazer in the Kay Bee case, without disclosure of the fact TBF was working under Glazer, Romney & Bain, and Barry Gold, at Stage Stores bankruptcy case in Houston, Texas (S. TX Bankr. 00-35078).

69.     Traub had been "caught" in the Stage Stores bankruptcy, for failures to disclose the conflicts of interest of Barry Gold, Ron Sussman, Larry Durant and Jack Bush, resulting in TBF having to file a Supplemental Bankruptcy Rule 2014/2016 Affidavit (Stages Stores docket 206).

70.     Facetiously, an FBI agent argued Plaintiff's real beef was Michael Glazer got $18 million, for his part in the Kay Bee case fraud; but the bandits only offered Plaintiff $1 million!

71.     The fact such an argument is made, without any investigation or prosecution of the obvious, validates how incestuous & systemic the corruption of the systems has become.

72.     Less than 10 days after the UST Disgorge Motion was placed into the eToys docket record, on February 15, 2005, by Mark Kenney, as the UST trial attorney who signed the Disgorge Motion, then Mark Kenney put forth the UST Stipulation to Settle the UST Disgorge Motion on February 24, 2005.

73.     Within the proffer to settle, Mark Kenney (and the former Region 3 UST Stapleton) abuse their authority with an agreement to grant Traub's TBF immunity vis-à-vis the remark that:

*"WHEREAS, the United States Trustee shall not seek to compel TBF to make additional disclosures"*

74.     Naturally, this unlawful proffer (bankruptcy courts and the UST program are not Article III bodies, and they have no authority – whatsoever – to grant immunity to perpetrators) did enrage both Plaintiff and the eToys shareholders, such as Robert Alber. The Law is quite clear on the matter that Barry Gold, MNAT and Paul Traub's TBF failure to disclose mandating disqualiying from the eToys case. The rogue public's servants were commanded by Congress (**28 U.S.C. § 586(a)(3)(F)**) to refer the matter to the local USAtt, for prosecution (but that would be an "official" recommendation to Colm Connolly – who would have been forced to recuse himself).

75.     When Plaintiff screamed at DOJ Deputy Director Lawrence Friedman, as head of the Executive Office of United States Trustees ("EOUST"), after the Director had promised Laser relief, replacing Roberta DeAngelis with Kelley B. Stapleton, and putting forth the Disgorge Motion, then the EOUST Director sent the following email, to Plaintiff, stating a promise:

**From:** Lawrence.A.Friedman@usdoj.gov
**Date:** 02/25/05 14:49:58
**To:** lmrohaas@msn.com
**Cc:** Kelly.B.Stapleton@usdoj.gov

**Subject:** RE: Item sent to the record today

Mr. Haas:

You most assuredly have our attention and my personal commitment that we will act in every case where action is required and we are aware of it. Please understand however, that like any prosecutor, we must exercise appropriate discretion in carrying out our responsibilities which while sometimes in a particular case may seem unjust, it is done with perspective to ALL matters we handle. I sympathize with your frustration and again assure you that my staff is extremely competent to handle this matter and will exercise appropriate judgment. Lawrence A. Friedman, Director Executive Office for US Trustees United States Department of Justice Washington, DC

76.     This posturing of babbling banter, B.S., has occurred, many times, taking different forms, since then, like the Yates Memo, or former U.S.A.G. Eric Holder saying his peed off that anyone would dare question his record on prosecuting Wall Street frauds.

77.     It is kind of hard to question a record – when one can hardly be found!

78.     After Plaintiff pointed out the $100 million-dollar Kay Bee case frauds, to EOUST Director Lawrence Friedman, he chose discretion over valor – resigning in April 2005.

79.     Shortly thereafter, the parties lied under oath, to get Plaintiff permanently expunged from the eToys case, where another lawyer, Michael Kennedy (a Gerry Spence graduate) blindsided Plaintiff by showing up for the August 2005 eToys hearing to address CLI's claim, when Michael Kennedy informed a Delaware Bankruptcy Court *visiting* justice, he forgot his *pro hac vice*.

80.     After the visiting justice dismissed Plaintiff, by the Poulis Standard, with an Order contradicting itself, totally obtuse to the confessions of MNAT, Paul Traub and Barry Gold's lying under oath – then this Plaintiff and eToys shareholder Robert Alber, filed timely appeals.

81.     Appearing to head off Plaintiff's eToys case appeal of September 2005, the Delaware Bankruptcy Court put forth a published "OPINION" on October 4, 2005, on failures to disclose conflicts of MNAT, Paul Traub's TBF[2] and Barry Gold; which also abused discretion, contradictive!

http://www.deb.uscourts.gov/sites/default/files/opinions/judge-mary-f.walrath/eroy-omnibus.pdf

82.     In the OPINION, it makes a find of fact that MNAT had an "actual" conflict of interest, which did "harm" the eToys estate (see pages 24 through 29, of the OPINION); but the Delaware Bankruptcy Court made many errant conclusions of law.

83.     On page 29 of the OPINION in the eToys case, the bankruptcy court stated:

        "Because the case is now over, disqualification of MNAT as counsel to the
        Debtors is not practical. Although the Court could order disgorgement of all fees earned
        by MNAT after it ceased being disinterested, the Court finds that is unwarranted because

MNAT did ultimately recuse itself from Goldman matters in September, 2001. Therefore, after that time it was not laboring under a conflict of interest. Because it had an actual conflict for several months (which it failed to timely disclose), the Court concludes that MNAT should disgorge all fees received in this case for work done by it on matters involving Goldman".

84.     It is a fact the eToys case did not close until 2015, after MNAT, along with Barry Gold (a partner of) Paul Traub did settle eToys v GSachs New York Supreme Court case for $7.5 million, instead of the more appropriate hundreds of millions (maybe even a billion, given this proof of reckless disregard for the truth and racketeering acts of retaliation, obstruction, destruction and the lies preventing the eToys shareholders from having their own committee). The Bankruptcy Court abused its authority and Plaintiff, along with eToys shareholder Robert Alber, appealed to the Third Circuit; which ruled the Federal Rules of Appellate Procedure didn't apply to eToys case.

85.     Other mindboggling contradictions included the Delaware Bankruptcy Court's "Chief Justice" OPINION, with this page 15 & 16 remarks:

> "Such "extraordinary circumstances" are present in this case. If the professionals did not disclose their conflicts or other connections with others in the case to the Court, or did so in ways that clearly contravened the statutory requirements, then parties did not have sufficient notice to seek relief under Rule 60(b)(1), (2) or (3) within the prescribed one-year time limit. In fact, many of the relationships were revealed only in response to Alber's Motion.
>
> Furthermore, the disclosure obligation mandated by the Bankruptcy Code and Rules "implicates a public policy interest justifying relief . . . under Rule 60(b)(6)." In re Southmark Corp., 181 B.R. 291, 295 (Bankr. N.D. Tex. 1995) (granting relief under Rule 60(b)(6) from final fee order which had been entered nearly three years earlier). See also Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 244-45 (1944) (holding that fraud upon the court equitably tolls the time for seeking to set aside a judgment or order); Pearson v. First NH Mort. Corp., 200 F.3d 30, 35-41 (1st Cir. 1999) (holding that attorney's false disclosure which denied any connection with creditors could support a finding that attorney had committed a fraud on the court); Benjamin's-Arnold, 1997 WL 86463, at *10 (holding that 16 "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient 'extraordinary circumstances' to justify relief under Rule 60(b)(6).

> To hold otherwise would only serve to penalize the [Plaintiff] for delay that was beyond his control and to reward conflicted attorneys for failing to disclose their conflicts beyond the one-year period.")."

86.     Though it is right there, in black & white, of the Chief Justice of one of the premier bankruptcy courts of our nation, stating it would be wrong to penalize [Plaintiff] - - to reward conflicted attorneys; oddly enough that's exactly what the bankruptcy court, and every other court, above and throughout the nation, has done, ever since!

87.     Michael Glazer, the CEO of Kay Bee, in 2000, when Kay Bee was acquired by BAIN – also was became a Director at Stage Stores (Glazer actually is the current CEO of Stage); which was overwhelmingly owned/controlled, by Mitt Romney.

88.     Barry Gold was the Director/executive assistant at Stage Stores, who hired Paul Traub's TBF law firm; and they were caught, back then, for failing to disclose connections.

89.     Then the parties all move over, to eToys, in merry-go-round, musical chair fashion, pretending to be opponents of each other; and the do a RICO, ***Bankruptcy Ring***, fraud.

90.     After usurp of Plaintiff, by MNAT putting forth a forged HAAS Affidavit with the absurd premise Laser HAAS "waived" millions of dollars in fees, this when Barry Gold promotion to be the eToys Confirmed PLAN Administrator, served the rackets well, putting a handpicked in control of the $50-million-dollars Plaintiff/CLI had helped get back into the eToys estate.

91.     After MNAT, Paul Traub and Barry Gold - partially confessed their deceits - in the eToys case, though till this very day, no court or authority has addressed the Colm Connolly refusal to look into eToys related cases, it was discovered, while the UST Disgorge Motion was purportedly punishing Paul Traub, of the fact MNAT was representing BAIN in the Kay Bee case, and Barry Gold was there, along with Michael Glazer and Romney's Sankaty entity; when Traub's TBF asked the visiting justices permission, for TBF to be the one to prosecute Glazer and BAIN.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 17

92.    Seeing EOUST Deputy Director Lawrence Friedman refused to address the matters (and he actually resigned, in April 2005 after being informed in March 2005) – Plaintiff put forth a notice to the Kay Bee bankruptcy court case – also being handled by a [different] visiting justice.

93.    As could be expected, the "Deal"aware DOJ went on the offensive, against this whistleblower, as Mark Kenney put forth a Motion to Strike & Expunge (see Kay Bee bankruptcy case docket item 2228) this Plaintiff's note to the Kay Bee visiting justice; which included the affidavit of the former Chairman of the eToys Creditors' Committee – stating, in paragraph 17:

> "Furthermore, I [the former Chair of eToys Creditors Committee] have somewhat followed the case from a distance and it has been represented that Barry Gold and the firm of Traub Bonacquist & Fox had a relationship that they have admitted to and state has no bearing on any matter(s) at hand. Whereby I, ----------, do hereby state and affirm that such is false. Had I had any inkling, whatsoever, that Barry Gold was anywhere connected to any party of the case, I would have, as a fiduciary sought advice how to correct the matter and would have not approved of the hiring of Barry Gold. I had direct discussions with Paul Traub of the firm of Traub Bonacquist & Fox regarding the hiring of Barry Gold and I am amazed at the level of deception that has occurred and the apparent lack of interest to halt it"

94.    In other words, Paul Traub deceived his own client, the eToys Creditors Committee.

95.    Again, why these obvious criminal escapades were not punished, is clearly due to the fact the organized syndicate had connections to the system of justice, including Colm Connolly being the USAtt over the very cases in question.

96.    Paul Traub then was forced to shuttle TBF (especially once the March 1, 2005 eToys evidence hearing ordered that an item with colored ink & raised seal, be put into the record, from the N.Y. Secretary of State - listing TBF to be of "Revoked" status).

97.    Then Traub moved his contingency over to Marc Dreier's law firm of Dreier LLP.

98.    Simultaneously, Mr. Traub was the "control" partner of Tom Petters Ponzi.

99.    GSachs and BAIN are also partners in the Tom Petters Ponzi Fingerhut dealings.

100.    It is also a well-known fact that Mitt, Scott & Tagg Romney are owners of Solamere; which was involved in the Allen Stanford multi-billion-dollar fraud; which is further evidence of the diehard refusals to investigate and prosecute, by the former heads of the DOJ. And there's more serious reasons to be wary of GSachs/SullCrom/ MNAT, or any other GSachs affiliated party.

### VI.         Mayhem & Murder dynamics interrelated

101.    Plaintiff suspected his counsel of Henry Heiman, was betraying CLI and HAAS. So, a trick was played upon Mr. Heiman, to shake the trees, making him believe he was being handed his hat by TBF; which resulted in the ferret out of the **Smoking Gun** proofs of eToys case fraud.

102.    Heiman had emailed Plaintiff a threat, from TBF partner Susan Balaschak, warning Laser to "back off" or TBF had enough [undue] influence to make sure CLI would never be paid, and that Laser's career would be destroyed.

103.    Beyond that, there was a threat that worse would happen; and about 2 months later, shortly after Plaintiff put forth the **Smoking Gun** proof Barry Gold and Paul Traub were secret partners, leading to the December 22, 2004 Emergency Hearing in the eToys – a worse happened!

104.    On Plaintiff's birthday (October 31, 2004) my daughter was abducted.

105.    Later, eToys shareholder Robert Alber was also offered a bribe, by Abramoff's self-professed partner, Johann Hamerski -- who threatened Alber, once the inducement was rejected, that – "people like you, who turns down a bribe, usually wakes up dead".

106.    Before Romney endeavored his next run to become President, an assassin (Michael Sesseyoff, a real career criminal with purported 36 convictions) tried to harm Robert Alber; and Michael Sesseyoff was shot/killed by Robert Alber, in Kingman, AZ, summer of 2010.

107.    Harry A., had been seeking to get Laser help, in Delaware, and he wound up dead, of an ongoing cancer dynamic, in 2010.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -       PAGE 19

108.    Anna Schaeffer was aided by Laser, to move back to Minnesota, from Arizona, so she could become a private detective.

109.    Anna was instrumental in the Tom Petters Ponzi case; because she was the ex-wife of a partner connected to Sun Country Airlines (an entity utilized by a Presidential wannabe).

110.    On Christmas Eve, 2010, Anna Schaeffer suffered and died from lightening cancer.

111.    A former Commander of the Delaware State Troopers, was working with Harry A., and he was reported (by Harry A.,) to be stricken with cancer – too.

112.    On New Year's Eve, 2010, John ("Jack") Wheeler, wound up dead, in a Delaware dump, after he was filmed being at the Nemours Building.

113.    The Nemours Building is the home to the Delaware U.S.Att's office; and Colm Connolly's new office at the Morgan Lewis law firm.

114.    Every time Plaintiff reaches out to a new "closed case" detective or FBI Agent about the Colm Connolly links and other homicide dynamics – those parties are moved off the case.

**Marty Lackner was brother of AUSA James Lackner**

115.    Marty Lackner was involved in the Tom Petters Ponzi through the Lancelot/Sky Bell feeder funds, in Chicago.

116.    There's no known investigation or prosecution of Marty Lackner.

117.    We have to say "was" of Marty; because he was found dead in his closet.

118.    Marty was brother of James Lackner; and James Lackner was the Minnesota AUSA – head of the Criminal Division (which should have presided over Tom Petters Ponzi).

119.    Only one small local media outlet has published the fact that Marty & James were brothers; and that James was the AUSA in Minneapolis.

120.    Many questions beg, of the Marty/James Lackner dynamics.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -    PAGE 20

121.   When did the Minnesota DOJ learn about the Lackner brothers' connections?

122.   Has the DOJ USAtt ever informed Washington, D.C., of the Lackner/Ponzi links?

123.   Did Marty ever give his brother's family, any gifts?

124.   Were there any communications, email or otherwise, between James & Marty?

125.   Has the Minnesota federal authorities retained all records related to the Lackners?

126.   Was there ever any federal investigation of the Lackner's dynamics & death?

127.   Could there be destruction of evidences, related to the Lackners?

128.   Did Marty – actually - kill himself?

129.   Is there any evidence James drove Marty to commit suicide?

130.   Who investigated this, when, where, and what was their conclusion?

131.   Beyond the fact these, possibly related, untimely demises, should be investigated, collectively, there's the big question of how in the heck it was the Minnesota DOJ was ever allowed to be the one to prosecute the Tom Petters Ponzi case, to begin with, with the Lackner links?

132.   Douglas Kelley's law firm, of Kelley & Wolter was Tom Petters attorney.

133.   Mr. Kelley was a former AUSA of Minnesota DOJ, who then, conflicted beyond compare, is allowed to "switch sides" to become the Petters Ponzi case Receiver.

134.   Speciously, Fingerhut was never seized by the Receiver, though Douglas Kelley's July 2012 lawsuit against Paul Traub, stipulates Traub "controlled" Tom Petters.

135.   BAIN & GSachs had given Fingerhut a $50 million dollar cash infusion, just a couple of months before the FBI raided Tom Petters Ponzi; and Traub rearranged the ownerships.

136.   Then Romney loses the 2012 Election.

137.   After that, the New York Supreme Court of Appeals grants eToys the go ahead to sue GSachs; but Paul Traub, MNAT and Barry Gold quickly settle eToys v GSachs for $7.5 mil.

138.    Then, Marc Dreier (Paul Traub's other partner) is arrested in December 2008; and –– oddly enough – the place where Mr. Dreier winds up doing federal time, is Minnesota.

139.    It is so good, for Marc Dreier, in Minnesota, he told his lawyer that Marc Dreier wanted nothing to do with Plaintiff and evidences that might exonerate him, concerning Traub.

140.    The point of all of this, is that there's so much racketeering going on, without a peep of federal courts, agents or agencies – how much worse will it get – once another "boy" is "in"?

141.    Especially since Plaintiff sent a letter, on July 30, 2016, daring the DOJ to arrest Laser, if one statement (almost exactly the same as the allegations in this Complaint) within the complaint letter to the U.S.A.G., was false in any way.

142.    Instead of receiving a response from the U.S.A.G., another FBI Agent calls Plaintiff and veils a threat of prosecution, if Plaintiff fails to remove certain names from his filings & website.

143.    Then, eToys shareholder, Robert Alber – wakes up DEAD!

## IV. RELEVANT PARTIES

144.    Plaintiff owns Collateral Logistic's, Inc., ("CLI") which was the court appointed fiduciary entity, in the eToys case (DE Bankr. 01-706).

145.    Defendant Donald Trump is being addressed in his official capacity as the President of the United States ("POTUS"), who nominated GSachs attorney/SullCrom partner, Jay Clayton, to be head of the SEC; which is going to have Senate Hearings on March 23, 2017).

146.    Defendant Jeff Sessions is being addressed in his official capacity as the new United States Attorney General ("U.S.A.G."); and, upon information and belief, this new U.S.A.G. is unaware of the rotten apples within his rank & file, inherited at the Department of Justice ("DOJ"); but Mr. Sessions has already had issues of recusals, and one has to wonder if those buried within the DOJ rank & file, will assuage the new U.S.A.G., from getting involved in this quagmire.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 22

147.     Defendant Michael Piwowar is being addressed in his official capacity as interim/ Acting head of the SEC; and the evidence bares out that the SEC is woefully incompetent, in our eToys related cases (Plaintiff has received emails and letters, and has had phone discussions with SEC personnel, even getting communication from the SEC OIG – who all have been useless).

148.     Defendant James Comey is being addressed in his official capacity as head of the FBI; and, upon information & belief, Mr. Comey's administration is far from blameless for eToys.

149.     Defendant Clifford White is being addressed in his official capacity as DOJ Deputy Director, who presides over the EOUST, after Lawrence Friedman's departure; and upon much information and firm belief, Clifford White is long overdue to be canned for his woefully derelict incompetence (or, quite possibly, even worse).

150.     Defendant Ellen Slights is being addressed in her official capacity, reportedly as an AUSA in Wilmington, DE.

151.     Ellen Slights is a direct, Spot On, proof of points, of how bad the undue influence of GSachs related parties, are, through their wayward agents at the law firms of SullCrom and MNAT.

152.     It was Ellen Slights who put forth the threat of Plaintiff being prosecuted if names were not removed from letters and websites (ordinarily, Ellen wouldn't have been named in this filing; but her venality & hubris {betrayal of the public's trust} demands proper, top bill, attention).

## VII.   Arguments for Intervention

153.     One must presume President Donald Trump must be unaware of all of these bad faith issues, perceivably systemic within the systems of justice, the President has inherited.

154.     It is a good thing a clearing of the former 46 U.S.Att's has occurred; because they failed, miserably, to investigate and prosecute GSachs & BAIN's obvious racketeering crimes.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -     PAGE 23

155.     Be that as it may, there's no guarantee a changing of the guard will accomplish much; because the rank & file rotten apples, remain (such as Gardella, Slights, Andy Vara, Mark Kenney).

156.     Former U.S.A.G. Eric Holder proved to be, to no avail, concerning these cases; which did continuous damage, even after Tom Petters, Allen Stanford and Marc Dreier were arrested and convicted.

157.     The reality is, all of them, and Rothstein, Palm Beach Links Capital, Lancelot, and Frank Vennes frauds (possibly even Madoff) are interrelated; and could have been prevented.

158.     If we can't get the appearance of propriety to transpire, even when we have Paul Traub and MNAT's confessions – then how is America to see justice – especially when GSachs now has ½ a dozen associated parties planted within the various federal systems of justice?

159.     Again, even if Jay Clayton is pure as snow, should it be allowed that GSachs gets the one its lawyers (who is married to a GSachs high level employee) – reward when there's so many acts of depraved indifference, and reckless disregard for the truth, with the frauds on the courts by GSachs counsels of MNAT or SullCrom – by misfeasance & malfeasance – so a prize gift occurs by "their guy" getting into a top level of public trust, to preside over vast GSachs cases?

160.     Is Plaintiff the only one who sees how absurd this pick to be head of the SEC – is?

161.     Has our nation become so numb to the vast cronyism & corruption occurring throughout our nation's court and systems of justice, that we are just going to lay down for this?

162.     It is a fact, unequivocal, that GSachs deliberately destroyed its client, eToys.

163.     Since the 1999 IPO stock fraud "spinning" scheme, GSachs, via its counsels of MNAT and SullCrom, have benefited from frauds on the court, retaliations, obstruction, bribery, intimidation of victims & witnesses, bankruptcy fraud, deceits upon Delaware and Los Angeles

District Courts, assaults upon the integrity of the judicial process of the Third & Ninth Circuits, and other racketeering crimes that emboldened Paul Traub to be control of the Tom Petters Ponzi!

164.    SullCrom has no defense, for the firms failures to point out the MNAT frauds, and how it was that MNAT nominated fraud crony Paul Traub (a/k/a "Brown Bag King of New York") to be the one to prosecute GSachs, in the New York Supreme Court case of eToys v GSachs.

165.    The massive bankruptcy & securities fraud, perpetrated upon the victims/ creditors and stockholders, by the pathetic settlement of $7.5 million, when any failing 1L could take the evidence (including MNAT's confession, which is germane to MNAT's asking for and receiving permission to destroy eToys books & records {and issue of obstruction by destruction of evidence}) most certainly prosecute dozens of parties, into jail, clawback billions and close down bad firms.

166.    In the Tom Petters Ponzi case, Fingerhut was a corrupt matter, even prior to the dynamic Fingerhut was purchased by Ponzi monies.

167.    As eToys fiduciary, Plaintiff put forth the premise Fingerhut was responsible for the demise of eToys, along with the GSachs stock fraud scheme.

168.    Fingerhut was eToys fulfilment processor of shipments to eToys customers. In 2000 Fingerhut botched a reported 25% of eToys customers' orders; and a cause of action was to ensue.

169.    Instead, Barry Gold, Paul Traub and MNAT settle eToys v Fingerhut; and Paul Traub/Tom Petters Ponzi acquires Fingerhut (which was listed as headquartered at 655 Third Ave).

170.    655 Third Ave, New York, NY, was TBF's address.

171.    GSachs and BAIN are involved in Fingerhut; which isn't seized by the Receiver!

172.    Mattel investors are entitled to recompense for the TLCo debacle that involved GSachs, BAIN, Mitt Romney, MNAT and Colm Connolly.

173.     Doesn't anybody care the Public Corruption Task Force appears to have been shut down to continue the cover up of the Colm Connolly corruption?

174.     Petters Ponzi also acquired Polaroid, Sun Country Airlines, and other such.

175.     Though Polaroid was seized by the Receiver, it was sold to the 2nd highest bidder, who was, in essence, Paul Traub.

176.     Once the sham sale of Polaroid was completed, for $83 million, then Paul Traub was named as co-principal of the winning bidder and a brand new, never before discussed, $2 Billion-dollar license deal, was revealed as – luckily - found!

177.     Nobody, including GSachs, BAIN, MNAT, Paul Traub and SullCrom, should be able to get away with escaping accountability, by the rigging of federal cases, vis-à-vis Colm Connolly and James Lackner riggings.

178.     Doesn't anybody care the Task Force was shut-down and agents threatened?

179.     Senator Diane Feinstein cared enough to send the Acting U.S.A.G., a letter, asking for an explanation; but we've never seen any answer.

180.     Does it matter people are dead, including Marty Lackner, the brother of Minnesota AUSA James Lackner?

181.     Plaintiff is in contact with Robert Alber's widow, and family/friends of the other fallen heroes, who have not even got anywhere near an ounce of justice. They all hope and pray the bad faith parties don't "get" this Plaintiff, before justice comes.

182.     Understandably, it is well documented this Plaintiff is an insignificant. So much so, I'm still alive. Be that as it may, this has never been about Laser Haas. It is not about what the racketeers are doing to me. It is what the organized criminals are doing to U.S. – that counts.

183.   There are others who have cried out the system has run, amok; and those parties are of nation significance and importance.

184.   In 2007, when the proof of the systems failures were looming large, former U.S.A.G. John Ashcroft had penned the following, as is reported by Francis C.P. Knize

Public comment on RULES GOVERNING JUDICIAL CONDUCT AND DISABILITY PROCEEDINGS UNDERTAKEN PURSUANT TO 28 U.S.C. §§ 351-364 Presented Pursuant [FR Doc. E7-14268 Filed 7-20-07; 8:45 am] BILLING CODE 2210-55-P DEPARTMENT OF JUSTICE United States Parole Commission Public Announcement, Pursuant to the Government in the Sunshine Act (Pub. L. 94-409) [5 U.S.C. Section 552b]

To Wit:

Our own former U.S. Attorney General John Ashcroft condemned the judicial branch of government by characterizing this branch as "organized crime".

He writes: "Bankruptcy court corruption is not just a matter of bankruptcy trustees in collusion with corrupt bankruptcy judges. The corruption is supported, and justice hindered by high ranking officials in the United States Trustee Program. The corruption has advanced to punishing any and all who mention the criminal acts of trustees and organized crime operating through the United States Bankruptcy Courts. As though greed is not enough, the trustees, in collusion with others, intentionally go forth to destroy lives. Exemptions provided by law are denied debtors. Cases are intentionally, and unreasonably kept open for years. Parties in cases are sanctioned to discourage them from pursuing justice. Contempt of court powers are misused to coerce litigants into agreeing with extortion demands. This does not ensure integrity and restore public confidence. The American public, victimized and held hostage by bankruptcy court corruption, have nowhere to turn."

185.   Previously, lawyers and federal agents stated Plaintiff had fabricated these remarks; but that contention is now made moot. Recently, this item and the transcript of the hearings they were reiterated upon, have been archived at the Administrator of the U.S. Courts.gov website  with

the Ashcroft remarks here http://www.uscourts.gov/sites/default/files/knoz_0.pdf and the

transcript here http://www.uscourts.gov/sites/default/files/transcrippept3702_0.pdf

186.    When federal agents or agencies of justice, including any court, summarily, being

arbitrary & capricious, under "Color of Law" dismisses complaints against GSachs, BAIN, Paul

Traub, MNAT, SullCrom and their government plants like Colm Connolly, calling plaintiff vexatious

or insubstantial, whilst stating the Federal Rules of Appellate Procedure, does not apply (as if the

LAW never will apply to the culprits) – those parties aren't defining who this Plaintiff is. They are

Ron Gardella, Lawrence Friedman, Ellen Slights, Mark Kenney, Clifford White or Colm Connolly

type parties – defining who THEY are!

187.    There's only 2 sides of this fence, right or wrong; and those who side against the

victims are siding for the racketeering victimizers (even if such siding is by the abject abstention of

the matters). Either there's absolutely no chance for even an appearance of impropriety, by the Jay

Clayton appointment to be head of the SEC, or there's a chance for conflicts to transpire.

188.    Arguably, as it is well documented GSachs benefits well and often, from conflicts of

interests of federal agents, if these parties can do this much, openly, then one has to wonder how

much they are getting away with, secretly, where Plaintiff doesn't have the resources to investigate.

189.    The standard for issuing a TRO is the same as the standard for issuing a preliminary

injunction (see *New Motor Vehicle Bd. Of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).

190.    A TRO is "an extraordinary remedy that may only be upon a clear showing that the

plaintiff is entitled to such relief" (see *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 24 (2008).

191.    Proper standard for preliminary injunctive relief requires a party to demonstrate (1)

'the he is likely to succeed on the merits, (2) that is likely to suffer irreparable harm in the absence of

preliminary relief, (4) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest'" (see *Stormans, Inc., v. Selecky,* 586 F.3d 1109, 127 (9 th Cir. 2009) that cites *Winter,* 555 U.S. at 20).

192.    As noted by the United States Attorney Manual, upon the DOJ's website, at

https://www.justice.gov/usam/civil-resource-manual-36-declaratory-judgment-act-and-ada

Congress has enacted a partial waiver of the sovereign immunity defense as to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701, et seq. By Pub.L. No. 94-574, Act of October 21, 1976, 90 Stat. 2721, 5 U.S.C. § 702 was amended to provide that an ("action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.") In addition, 5 U.S.C. § 703 has been amended to allow suit to be brought against the United States or any of its agencies or officers.

The sovereign immunity defense has been withdrawn only with respect to actions seeking specific relief other than money damages, such as an injunction, a declaratory judgment, or a writ of mandamus. Bowen v. Massachusetts, 487 U.S. 879 (1988). Specific statutory provisions for the recovery of money damages, such as the Little Tucker Act and the Federal Tort Claims Act, are unaffected. See H.Rep. 94-1656, p. 13, 1976 U.S.Code Cong. & Ad.News 6133.

Another barrier to judicial review of administrative action was removed by section 2 of Pub.L. No. 94-574, which amended 28 U.S.C. § 1331(a) so as to eliminate the $10,000 amount-in-controversy requirement in actions against the United States, any agency thereof, or any officer or employee thereof in his official capacity. This provision persuaded the Supreme Court to conclude that, subject to preclusion-of-review statutes, jurisdiction to review agency action is conferred by 28 U.S.C. § 1331, and that the Administrative Procedure Act is not an independent grant of jurisdiction. See Califano v. Sanders, 430 U.S. 99, 105-07 (1977).

Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of federal jurisdiction. The purpose of that Act is merely to provide an additional remedy, once jurisdiction is found to exist on another ground. See Benson v. State Bd. of Parole and Probation, 384 F.2d 238, 239 (9th Cir. 1967), cert. denied, 391 U.S. 954 (1968); Schilling v. Rogers, 363 U.S. 666, 677 (1960). Therefore, where jurisdiction to review a particular agency action under 28 U.S.C. § 1331 has been precluded by another statute, the Declaratory Judgment Act does not provide an independent basis for granting relief.

193.    Thus far, the United States Government agencies of Justice, have been remiss, over and over again, in their fiduciary duty to protect the Constitution of the United States, from assaults upon it, by BAIN & GSachs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -       PAGE 29

194.    It is plausible (arguable likely) GSachs will continue to receive favorable treatment, once one of their well-connected associates, such as Jay Clayton, or Colm Connolly, or Paul Traub, or anyone else even slightly affiliated, gets into high office, to preside over GSachs cases.

194.    Plaintiff (and the citizens of the United States) are entitled to relief from observable Wall Street organized crimes that are eluding accountability, chiefly due to "revolving door" switch of sides by federal agents, grafting undue influence & power to benefit GSachs & BAIN.

195.    No one in the nation, especially any high office federal agent, failed to pay attention to the fact U.S.Att Chris Christie gave his former boss and co-worker (U.S.A.G. John Ashcroft and Los Angeles U.S.Att Debra Yang) a $50-milliondollar No Bid Deferred Prosecution Agreement.

196.    This gift also resulted in a redaction, throughout the internet, of John Ashcroft's remarks about corruption of the U.S. Bankruptcy system.

197.    Strange how a play on words can twist justice, where everyone seems to forget what we use to call it – when a federal agent got millions of dollars – to forgo prosecutions.

198.    Arguably, Plaintiff would win a case, on the merits, against GSachs and its partners of BAIN, Paul Traub, SullCrom and MNAT – if "Color of Law" wasn't being so profusely used to stymie justice, blocking Plaintiff from having his day in court.

199.    There are, already, thousands of victims who lost billions, including Mattel investors, eToys, Tom Petters Ponzi and Marc Dreier clients; and the chances the harm will become irreparable is clearly obvious, should another "planted" party be placed in such a high level of public's trust, as head of the SEC.

200.    It should be patently obvious that the balance of favor tips in favor of plaintiff (and the nation), should a more suitable pick to head the SEC, occur (U.S.A.G. Sanders or Warren?).

201.     Our nation is already suffering from GSachs and BAIN being unjustly enriched, and the courts of our nation being plagued, due to the fact that the previous administrations of Justice had planted parties within the various agencies; and, it most assured is in the public's interest that such chicanery is brought to a slammed halt.

202.     There's already evidence the powers that be are trying to hide relevant issue, from being publicly known. Jay Clayton's bio at SullCrom website, is now redacted.

203.     One thing Plaintiff was unaware of, is the fact Jay Clayton's $7.6 million in income, last year, from SullCrom, includes Clayton's investment in portfolio managed by BAIN.

204.     Plaintiff has posed the question of, whether or not, Mitt Romney's meeting with President Elect Donald Trump, was – actually so public – so those parties could talk about BAIN and GSachs exposure to federal investigations.

205.     It is worthy of investigation to see if Jay Clayton's name came up, during the dinner!

206.     Also, it is against the law for a public official to make money from issues he presides over (including the fact Jay Clayton's wife, Gretchen, still works at GSachs).

207.     Mr. Clayton will also have auspice over policy decisions, at the SEC; and one can justly argue the stance of the current Administration, does not bode well for the public (nixing of Dodd/Frank, and eviscerate of the CFPB and Rules of the SEC – such as disclosure or compliance with the new millennium laws).

## VIII.   FIRST CAUSE OF ACTION

### (Fifth Amendment – Equal Protection)

208.     Plaintiff alleges and incorporates by reference all the statements, allegations and other such set forth in each of the preceding paragraphs of this Complaint.

209.     The due process clause of the Fifth Amendment prohibits the federal government from denying citizens equal protection of the laws.

210.     Through "Color of Law" and other perversions of justice, including breaches of fiduciary duty, and worse, via overt acts and/or omissions, or failures to act, Defendants James Comey, Clifford White and Ellen Slights, are directly responsible for the failures of the United States Government to prosecute GSachs, BAIN and the DOJ embarrassment of Colm Connolly, Roberta DeAngelis, Andy Vara and Mark Kenney.

211.     Arguably, as long as rotten apples such as Ellen Slights, Andy Vara, Ron Gardella and Clifford White, remain at their posts, betraying the public's trust, then the racketeering of GSachs and BAIN are likely to increase, if another GSachs affiliated party captures another agency of justice, of such high office as the SEC.

## IX.     SECOND CAUSE OF ACTION

### (First Amendment – Right to Redress Grievances)

212.     Plaintiff alleges and incorporates by reference all the statements, allegations and other such set forth in each of the preceding paragraphs of this Complaint.

213.     Per the U.S. Supreme Court case of *In re Hazel-Atlas Glass v. Hartford-Empire Co.*, 322 U.S. 238 (1944), where *Hazel-Atlas* was cited by both the UST Disgorge Motion of TBF and the Delaware Bankruptcy Court's OPINION of October 4, 2005 – there's no statute of limitations for instances of fraud on the court, by officers of the court (and the UST Disgorge Motion paragraph 35 noted that Paul Traub's acts were a "fraud on the court").

214.     This pursuer of justice has the right, indeed a duty, to inform federal authority of the fact crimes have been, are – and probably will continue to be perpetrated by racketeers and plants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -       PAGE 32

215.   It doesn't matter how many times an unjust court rules against Plaintiff (usually via "Color of Law") stipulating the Federal Rules of Appellate Procedure do not apply (Third Circuit adjudication, unsigned, case 07-2360), or that the deaths and massive material adverse harms and corruptions are "insubstantial" (Ninth Circuit 14-55784) to allow these crimes to remain 'Scot Free' because the U.S. Supreme Court has stipulated, in *Cooper v. Aaron* 358 U.S. 18 certifies such to unlawful orders -- specifically:

> "*No state legislator or executive or judicial officer can war against the Constitution without violating his solemn oath to support it*"

216.   Our nation is at risk, and there are many statutes, including 5 U.S.C. § 702 granting right of judicial review of government acts of bad faith, including failures to act.

## X       THIRD CAUSE OF ACTION

### (Fifth Amendment – Right to Due Process)

217.   Plaintiff alleges and incorporates by reference all the statements, allegations and other such set forth in each of the preceding paragraphs of this Complaint.

218.   For more than a decade, the various systems of justice, including the Bankruptcy Courts, District courts and Circuit Courts have been ruling contrary to law, in an arbitrary & capricious manner, usually under "Color of Law", stacking up a mile-high, untenable (in a licit realm of justice) house of cards of protectionism for GSachs & BAIN's rackets unjust enrichments.

219.   Defendants official offices are required by Law and their personal oaths of office to protect the United States Constitution and citizenry from these crimes and betrayals of public trust!

220.   Plaintiff and the nation have the right to due process; which -- thus far -- has been denied, inexplicably and intolerably. Shouldn't such be remedied, sua sponte, upon the fact this Plaintiff has put his life and liberty, on the line, to bring forth these facts, to the courts?

## X.   FOURTH CAUSE OF ACTION
### (Substantive Violation of the Administrative Procedure Act)

221.   Plaintiff alleges and incorporates by reference all the statements, allegations and other such set forth in each of the preceding paragraphs of this Complaint.

222.   The Administrative Procedure Act, 5 U.S.C. $\$\$$ and 706(2) requires federal agencies conduct formal rule making before engaging in action that impacts rights; and it prohibits federal agency action that is arbitrary, unconstitutional, and contrary to statute.

223.   The Bankruptcy, District and Circuit Courts all demonstrated a thorough review of the eToys case dynamics, as have the FBI, SEC, OIG, OPR, OSC, Public Integrity Section, EOUST and other official government bodies, such as the DOJ, in their unrelenting and unremorseful dismissal of Plaintiff as whistleblower and the thousands Plaintiff was court appointed to protect.

224.   However, each and every time those official bodies/parties have leapt over Paul Traub, MNAT, Barry Gold, Colm Connolly, SullCrom, GSachs and BAIN's obvious malum in se and malum prohibitum, to toss the victims of organized crime, out the door.

225.   The rotten apples within the federal agencies of justice, and bad faith courts, are in violation of 18 U.S.C. $\$$ 4 MisPrision of a Felony and 18 U.S.C. $\$$ 3057(a).

226.   Similarly, Defendant Clifford White and his underlings duplicitous (Andy Vara, Mark Kenney) are in violation of the akin statute commanding the UST to report crimes to the local U.S. Attorney (which would have been, Colm Connolly and continues to be Defendant Ellen Slights) as per 28 U.S.C. & 586(a)(3)(F).

## XI.   PRAYER FOR RELIEF

227.   Is it too much to ask that the insanity of consummate bad faith acts, to benefit GSachs and BAIN, be brought to halt, even though it means the end of MNAT (as they should), jail

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 34

times for Colm Connolly, Ellen Slights and Paul Traub (as they should be put), and the billions of dollars in clawbacks GSachs and BAIN and Mitt Romney should pay (as they should do; though such will likely be paid by insurance companies)?

228.     Can the hundreds of racketeering crimes and corruption of our federal agents and agencies of justice, be brought to an end, as they were supposed to have been arrested, long ago?

229.     Plaintiff prays this court consider the TRO, or some such other as deemed appropriate; because the empirical evidences clearly demonstrate our DOJ systems of justice is greatly infected, badly?

230.     There's an untenable house of crooked cards, stacked a mile high; which can be brought down by this court addressing – ANY – of the facts readily corroborated by public docket records and federal archives incontrovertible.

231.     A quantitative & qualitative difference can be made, to halt venality and manifest injustice, where Robert Alber, Marty Lackner and Jack Wheeler died without seeing justice done, as the Minnesota, conflicted U.S. Attorney's office played down the severity of the Tom Petters Ponzi from $40 Billion plus, to $3.7 Billion, whilst other courts allowed the conflicted to seek expunge of Mandatory Victim Restitution Act (as if Congress utilizes such words as "Mandatory" flippantly).

233.     Plaintiff prays this court will be a breed apart and comprehend that Plaintiff has the right to vex organized criminals? Especially when those bandits are, profusely, betraying the trust of their appointed clients. Otherwise, Capon-types will "*retroactively*" retire from their organized crimes!

Sworn to and Dated this 21st day of March, 2017.

3-21-17

_____

Steven Laser Haas, Whistleblower – eToys RICO cases

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, SEEKING TRO. -      PAGE 35